**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| APRIL B., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  1:23CV81 |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, April B., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claims for Disability Insurance Benefits ("DIB"), Supplemental Security Income ("SSI"), and Disabled Widow's Insurance Benefits ("DWIB"). (Docket Entry 1.)[1] Defendant has filed the certified administrative record (Docket Entry 6 (cited herein as "Tr. __")), and both parties have submitted dispositive briefs in accordance with Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C.

---

[1] The Act principally "comprises two disability benefits programs. [DIB] provides benefits to disabled persons who have contributed to the program while employed. [SSI] provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig v. Chater, 76 F.3d 585, 589 n.1 (4th Cir. 1996) (internal citations omitted). An individual establishes the disability-related criteria of DWIB using the same standards as apply in DIB and SSI claims. See 42 U.S.C. § 402(e)(1)(B) (incorporating the definition of "disability" in 42 U.S.C. § 423(d)).

§ 405(g) (Docket Entries 10, 13). For the reasons that follow, the Court should enter judgment for Defendant.

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI (Tr. 717-29), alleging a disability onset date of July 26, 2019 (see Tr. 717, 720, 722). Upon denial of those applications initially (Tr. 546-69, 598-607) and on reconsideration (Tr. 570-93, 610-17), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 618-19), and added a claim for DWIB (Tr. 757-74), alleging the same onset date (see Tr. 761, 769). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing (Tr. 500-45), during which Plaintiff amended her onset date to February 14, 2020 (see Tr. 17, 504-06, 775). The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 13-39.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-7, 40-499, 714-16, 876-81), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2024.

2. It was previously found that [Plaintiff] is the unmarried widow of the deceased insured worker and has attained the age of 50. [Plaintiff] met the non-disability requirements for [DWIB] . . . .

2

3.  The prescribed period [for DWIB] ends on November 30, 2025.

4.  [Plaintiff] has not engaged in substantial gainful activity since February 14, 2020, the amended onset date.

5.  [Plaintiff] has the following severe impairments: obesity and recurrent nephrolithiasis.

. . .

6.  [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

7.  . . . [Plaintiff] has the residual functional capacity to perform medium work (lift and carry 50 pounds occasionally and 25 pounds frequently . . .), except she should avoid concentrated exposure to loud noise levels; she should avoid concentrated exposure to respiratory irritants such as fumes, odors, gases, and poorly ventilated areas; she should avoid all exposure to hazardous machinery and unprotected heights; she is able to work with levels of illumination similar to that found in typical office settings, but she should not work in sustained direct sunlight; she is limited to jobs with no acute hearing requirements as part of the job.

. . .

8.  [Plaintiff] is capable of performing past relevant work as a resident supervisor, receptionist, and director of community organizations.  This work does not require the performance of work-related activities precluded by [Plaintiff]'s residual functional capacity.

. . .

In addition to past relevant work, there are other jobs that exist in significant numbers in the national economy that [Plaintiff] also can perform, considering [Plaintiff]'s age, education, work experience, and residual functional capacity.

. . .

3

> 9. [Plaintiff] has not been under a disability, as
> defined in the . . . Act, from July 26, 2019, through the
> date of this decision.

(Tr. 19-32 (bold font and internal parenthetical citations omitted).)[2]

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might

---

[2] The ALJ erroneously found Plaintiff not disabled from July 26, 2019, through the date of the ALJ's decision on August 25, 2022 (see Tr. 32), because, as the ALJ had acknowledged earlier in his decision (see Tr. 17, 19), Plaintiff amended her onset date to February 14, 2020 (see Tr. 17, 504-06, 775). That error did not prejudice Plaintiff, however, because a finding that Plaintiff did not qualify as disabled from July 26, 2019, to August 25, 2022, necessarily encompasses a finding that she did not so qualify from February 14, 2020, to August 25, 2022.

4

accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving

a disability," <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" <u>id.</u> (quoting 42 U.S.C. § 423(d)(1)(A)). "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." <u>Id.</u> "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." <u>Id.</u>

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' <i>i.e.</i>, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." <u>Albright v. Commissioner of the Soc. Sec. Admin.</u>, 174

F.3d 473, 475 n.2 (4th Cir. 1999).[3]  A finding adverse to the
claimant at any of several points in the SEP forecloses an award
and ends the inquiry.  For example, "[t]he first step determines
whether the claimant is engaged in 'substantial gainful activity.'
If the claimant is working, benefits are denied.  The second step
determines if the claimant is 'severely' disabled.  If not,
benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th
Cir. 1990).

On the other hand, if a claimant carries his or her burden at
each of the first three steps, "the claimant is disabled." Mastro,
270 F.3d at 177.  Alternatively, if a claimant clears steps one and
two, but falters at step three, i.e., "[i]f a claimant's impairment
is not sufficiently severe to equal or exceed a listed impairment,
the ALJ must assess the claimant's residual functional capacity
('RFC')." Id. at 179.[4]  Step four then requires the ALJ to assess
whether, based on that RFC, the claimant can perform past relevant
work; if so, the claimant does not qualify as disabled. See id. at

---

[3]  "Through the fourth step, the burden of production and proof is on the
claimant.  If the claimant reaches step five, the burden shifts to the
[Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[4]  "RFC is a measurement of the most a claimant can do despite [the claimant's]
limitations." Hines, 453 F.3d at 562 (noting that administrative regulations
require RFC to reflect claimant's "ability to do sustained work-related physical
and mental activities in a work setting on a regular and continuing basis . . .
[which] means 8 hours a day, for 5 days a week, or an equivalent work schedule"
(internal emphasis and quotation marks omitted)).  The RFC includes both a
"physical exertional or strength limitation" that assesses the claimant's
"ability to do sedentary, light, medium, heavy, or very heavy work," as well as
"nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658
F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers
all relevant evidence of a claimant's impairments and any related symptoms (e.g.,
pain)." Hines, 453 F.3d at 562-63.

179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." <u>Hall</u>, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. <u>Hines</u>, 453 F.3d at 567.[5]

### B.  Assignments of Error

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ's [s]tep 4 findings cannot be supported by substantial evidence where the ALJ failed to clarify whether [Plaintiff]'s past relevant work [('PRW')], as identified, were [sic] composite jobs or not" (Docket Entry 10 at 8 (bold font and block formatting omitted)); and

2) "[t]he ALJ's reliance on the VE's testimony to support an alternate [s]tep 5 denial of benefits in [Plaintiff]'s claim[s] is

---

[5]  A claimant thus can establish disability via two paths through the SEP.  The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  <u>See, e.g.</u>, <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

8

not supported by substantial evidence where the ALJ failed to identify and resolve the apparent conflict between the VE's testimony and the [Dictionary of Occupational Titles ('DOT')]" (id. at 11 (bold font and block formatting omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 13 at 5-9.)

## 1. PRW

In Plaintiff's first assignment of error, she alleges that "[t]he ALJ's [s]tep 4 findings cannot be supported by substantial evidence where the ALJ failed to clarify whether [Plaintiff]'s [PRW], as identified, were [sic] composite jobs or not." (Docket Entry 10 at 8 (bold font and block formatting omitted).) In particular, Plaintiff points out that the VE could not provide DOT titles that "encompass[ed] all the job duties performed by [Plaintiff] in any of [her] three [past relevant] jobs" (id. at 10 (citing Tr. 534-35)) and, instead, provided "[DOT] codes and job titles [] to the ALJ as a 'reference'" (id. (quoting Tr. 534-35)). Moreover, Plaintiff emphasizes that the ALJ asked the VE for other jobs that fit the hypothetical question, because the ALJ observed that "it sounds like a lot of the past work is more kind of composite," and that Plaintiff "did several different things." (Id. at 9 (quoting Tr. 538) (emphasis omitted).) According to Plaintiff, the ALJ also erred because he "failed to include the appropriate findings of fact regarding the physical and mental

9

demands of [Plaintiff's PRW] in the decision as required by [Social Security Ruling 82-62, Titles II and XVI: A Disability Claimant's Capacity to Do Past Relevant Work, In General, 1982 WL 31386 (1982) ("SSR 82-62")]." (Id.) Plaintiff's contentions do not warrant relief.

"[U]nder the fourth step of the disability inquiry, a claimant will be found 'not disabled' if [she] is capable of performing [her PRW] either as [she] performed it in the past or as it is generally required by employers in the national economy." Pass v. Chater, 65 F.3d 1200, 1207 (4th Cir. 1995); see also 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2).[6] In other words, a claimant must demonstrate "an inability to return to her previous work (i.e., occupation), and not simply to her specific prior job." DeLoatche v. Heckler, 715 F.2d 148, 151 (4th Cir. 1983). In making that step four finding, the regulations permit the ALJ to "use the services of [VEs] . . ., or other resources, such as the [DOT]," and permit the VE to "offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's [PRW], either as the claimant actually performed it or as generally performed in the national economy," as well as to "offer expert opinion testimony in response to a hypothetical

---

[6] The Commissioner's regulations define PRW as "work that [a claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). Plaintiff raises no argument that her PRW as classified by the VE (see Tr. 534-35) fails to meet any of those requirements. (See Docket Entry 10.)

10

question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's [PRW], either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). An ALJ "may rely on the general job categories of the [DOT] as presumptively applicable to a claimant's [PRW]," but "a claimant may overcome the presumption that the [Commissioner's] generalization applies by demonstrating that her duties were not those envisaged by the framers of the [Commissioner's] category." DeLoatche, 715 F.2d at 151.

Composite jobs have "significant elements of two or more occupations and, as such, have no counterpart in the [DOT]." Program Operations Manual System (POMS) DI 25005.020B ("Past Relevant Work (PRW) as the Claimant Performed It"). Put another way, PRW "may be a composite job if it takes multiple [DOT] occupations to locate the main duties of the PRW as described by the claimant." Id. However, "[a] former job performed by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy" and, thus, "if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by

11

employers throughout the economy, the claimant should be found to be 'not disabled.'"  Social Security Ruling 82-61, Titles II and XVI: Past Relevant Work – The Particular Job or the Occupation as Generally Performed, 1982 WL 31387, at *2 (1982) ("SSR 82-61") (emphasis added).  If the ALJ determines that PRW qualifies as a composite job, the POMS requires the ALJ to "explain why."  POMS DI 25005.020.  Moreover, "[w]hen comparing the claimant's RFC to a composite job as the claimant performed it," the ALJ may find "the claimant capable of performing the composite job only if he or she can perform all parts of the job."  Id. (emphasis added).  Furthermore, because "[a] composite job does not have a [DOT] counterpart," the ALJ should not find that a claimant can return to such work "as generally performed in the national economy."  Id.

    As an initial matter, Plaintiff's failure to cross-examine the VE at the hearing regarding her classification of Plaintiff's PRW despite representation by counsel and cross-examination of the VE on other subjects (see Tr. 539-44), or to raise the issue of composite jobs at all during the hearing or in post-hearing objections or briefing, constitutes waiver of her right to now attack that classification for the first time on judicial review, see Helton v. Kijakazi, No. 2:21CV15, 2022 WL 3031345, at *6 (W.D. Va. Aug. 1, 2022) (unpublished) (concluding ALJ "did not err by failing to evaluate [the plaintiff]'s [PRW] as a composite job[,]" where "counsel did not raise th[at] issue in the current claim

until he appealed it to th[e federal district] court, despite having ample opportunity to do so[,]" including in opening statement at hearing or in request for review to Appeals Council), recommendation adopted, 2022 WL 4003870 (W.D. Va. Sept. 1, 2022) (unpublished); Jones v. Commissioner of Soc. Sec., No. 4:19CV28, 2020 WL 3076410, at *2 (N.D. Miss. June 10, 2020) (unpublished) ("[A]t step four, where the claimant retains the burden to establish that [s]he is unable to perform h[er] PRW, a claimant who disagrees with the VE's characterization of [the claimant's] PRW is obligated to raise that issue and press it on cross-examination or else the issue is waived."), aff'd sub nom., Jones v. Saul, 834 F. App'x 839 (5th Cir. 2020); Kawelo v. Colvin, No. CV 15-223, 2016 WL 3983223, at *8 (D. Haw. July 25, 2016) (unpublished) ("[The plaintiff], represented by counsel at the hearing, did not question or otherwise object to the VE's testimony based upon the [DOT]'s classification of her PRW as three different positions. Consequently, the ALJ, relying on the unrefuted testimony of [the plaintiff] and the VE, rationally found that [the plaintiff] performed three separate jobs while employed at the bank."), aff'd sub nom., Kawelo v. Berryhill, 732 F. App'x 584 (9th Cir. 2018); Norman v. Commissioner of Soc. Sec., No. 1:14CV2374, 2016 WL 922741, at *3 (N.D. Ohio Mar. 11, 2016) (unpublished) ("[D]uring the hearing, where [the] plaintiff was represented by counsel, she [] did not challenge the VE's testimony regarding her ability to

13

perform her PRW as a case worker under [DOT] 195.107-010, which is generally performed at a sedentary exertional level. [On judicial review], she claims that was an incorrect classification because it does not address her career concentration on adolescents. She claims she should be classified under [DOT] 195.107-114 (Caseworker, Child Welfare), which is generally performed at the light exertional level. This objection is readily overruled due to the fact that the alleged misclassification was never raised in any fashion during the hearing and was never otherwise pointed out to the ALJ.").[7]

Moreover, even if the Court did not find that Plaintiff waived her right to raise the alleged misclassification of her PRW, she still cannot prevail in this matter, because she has shown neither that the VE misclassified Plaintiff's PRW as a receptionist and house manager with Path of Hope, nor that the ALJ erred in failing to find those jobs composite. Plaintiff described her PRW at Path of Hope, a residential substance abuse rehabilitation program, to consist of three distinct jobs that she held at different times -

---

[7] Although Social Security Ruling 00-4p, Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions, 2000 WL 1898708 (Dec. 4, 2000) ("SSR 00-4p"), places an affirmative duty on an ALJ to elicit an explanation from the VE as to any "apparent unresolved conflict" between the VE's testimony and the DOT, SSR 00-4p, 2000 WL 1898708, at *2 the alleged misclassification of Plaintiff's PRW by the VE does not constitute an "apparent unresolved conflict between VE . . . evidence and the [DOT]," id., but, rather, a conflict between the VE's classification of Plaintiff's PRW and Plaintiff's description of such work. See Harris v. Kijakazi, No. 1:20CV1133, 2022 WL 541438, at *5 (M.D.N.C. Feb. 23, 2022) (unpublished), recommendation adopted, 2022 WL 868003 (M.D.N.C. Mar. 23, 2022) (unpublished) (Biggs, J.). Consequently, Plaintiff's arguments do not trigger SSR 00-4p's requirement that the ALJ independently identify and resolve apparent conflicts between the VE's testimony and the DOT.

receptionist, development director/residential team leader, and house manager. (See Tr. 510-16.)[8]  As the following colloquy between the ALJ and the VE regarding Plaintiff's PRW shows, the VE classified those three jobs as the DOT titles Receptionist, Director, Community Organization, and Residence Supervisor, respectively:

> [ALJ:] . . . [C]ould you please classify [Plaintiff]'s past work for me?
>
> [VE:] Yes, sir. . . . [T]he house manager, <u>there is not one [DOT] number that will address everything that was done under that job, but I can give you one to reference</u> and it would be resident supervisor. It's classified as sedentary and skilled. The SVP is 6. The [DOT] number is 187.167-186 and <u>as that job was performed, it was heavy</u>. And the title of receptionist, from what I understand, <u>there were a lot of duties in that job. Again, there is not one [DOT] number that's going to include all those duties but I can give you the receptionist [DOT] number to reference</u>. It's classified as sedentary and semiskilled. The SVP is 4. The [DOT] number is 237.367-038 and as that job was performed, it was medium and I believe that based on the job responsibilities <u>as it was performed, it would have been skilled</u> with a [DOT] number of -- I mean an SVP number of 5. The development director, <u>again there isn't going to be one [DOT] number that addresses everything that was done, but I can give you one to reference</u>. It would be director, community organization. It's classified as sedentary and skilled. The SVP is 8. The [DOT] number is 187.167-234 and <u>as that job was performed, it was heavy</u>.

(Tr. 534-35 (emphasis added) (citing DOT, No. 237.367-038 ("Receptionist"), 1991 WL 672192 (G.P.O. 4th ed. Rev. 1991), DOT,

---

[8] Plaintiff's work history reports either did not describe any of the duties of those positions (see Tr. 784-93, 817-24), or described all of her duties in the three different roles at Path of Hope together (see Tr. 821). Thus, this Recommendation focuses on Plaintiff's testimony regarding her three different Path of Hope jobs in evaluating this assignment of error.

No. 187.167-186 ("Residence Supervisor"), 1991 WL 671408, and <u>DOT</u>,
No. 187.167-234 ("Director, Community Organization"), 1991 WL
671420).) The VE testified in response to the ALJ's dispositive
hypothetical question that an individual with Plaintiff's RFC could
perform "[t]he receptionist position . . . as it's defined in the
[<u>DOT</u>] and as it was actually performed," the "resident
supervisor . . . as it's defined in the [<u>DOT</u>], but not as it was
actually performed[, a]nd the director, community
organization . . . as it's defined in the [<u>DOT</u>] only." (Tr. 537.)

Following that testimony, the ALJ asked the VE to provide
other jobs available in significant numbers in the national economy
responsive to the hypothetical:

> [ALJ:] . . . Now, although you did provide me with a
> couple jobs that [the hypothetical individual] could
> perform both as actual and general as past work, <u>just so
> I have a clear record</u>, could you please provide me
> several other jobs that this hypothetical individual
> could perform within those limitations?
>
> [VE:] And that's at the medium level, yes, sir.
>
> [ALJ:] Yes, ma'am.
>
> [VE:] Okay. I'll look them up here.
>
> [ALJ:] . . . And the reason I'm asking for more jobs, <u>it
> sounds like a lot of the past work is more kind of
> composite. [Plaintiff] did several different things</u>, so
> I just want to find out –
>
> [VE:] <u>Right, right</u>. I'm looking it up. I'm pulling it
> up right now, Your Honor.

(Tr. 537-38 (emphasis added).) The ALJ adopted the VE's testimony
regarding Plaintiff's ability to return to her PRW, and did not

make any finding regarding whether any of Plaintiff's PRW qualified as a composite job. (<u>See</u> Tr. 31.)

Significantly, despite arguing that Plaintiff's PRW qualifies as composite jobs, Plaintiff has not attempted to make <u>any</u> argument as to which other <u>DOT</u> titles apply to her former job duties, or even identified which specific duties of each Path of Hope job the corresponding <u>DOT</u> title cited by the VE fails to capture (<u>see</u> Docket Entry 10 at 8-11). <u>See</u> POMS DI 25005.020B (explaining that composite jobs have "significant elements of <u>two or more occupations</u> and, as such, have no counterpart in the [<u>DOT</u>]," and that PRW "may be a composite job if it takes <u>multiple [DOT] occupations</u> to locate the main duties of the PRW as described by the claimant" (emphasis added)). Instead, Plaintiff <u>now</u> seizes upon the ALJ's comment about the <u>potential</u> for Plaintiff's PRW to qualify as composite jobs (<u>see</u> Tr. 538), despite having failed to probe that subject on cross-examination at the hearing (<u>see</u> Tr. 539-44), together with the VE's response of "[r]ight, right" (Tr. 538), as a sufficient basis for the Court to find reversible error on the issue of composite jobs. The Court should reject that approach.

The full context of the ALJ's exchange with the VE makes clear that, at most, the ALJ acknowledged the <u>possibility</u> that some of Plaintiff's prior jobs for Path of Hope <u>could</u> qualify as composite. (<u>See</u> Tr. 537-38.) The ALJ did not specifically find that the jobs

17

qualified as composite during the hearing (see id.), and solicited additional jobs from the VE out of an abundance of caution to ensure a "clear record" (Tr. 537). Similarly, the Court should not find that the VE's response of "[r]ight, right" (Tr. 538) to the ALJ's statement regarding the potential of composite jobs equates to affirmative testimony from the VE that Plaintiff's prior Path of Hope jobs, in fact, qualified as composite.[9] Importantly, the VE only provided one DOT title to account for each of Plaintiff's prior Path of Hope jobs (see Tr. 534-35), and did not, at any time, offer an opinion that those prior jobs constituted composite jobs (see Tr. 532-44).

Moreover, in contrast to the facts here, district courts within the Fourth Circuit have found reversible error when an ALJ failed to address the composite issue despite specific evidence at the hearing that a prior job encompassed two or more DOT titles. See Robert C. v. Commissioner of Soc. Sec. Admin., No. CV 22-1935, 2023 WL 6126062, at *5 (D. Md. Sept. 19, 2023) (unpublished) (remanding for ALJ "to explain whether or why he rejected [the p]laintiff's argument that his PRW was a composite job," where that "question . . . was a genuine issue raised and discussed at the hearing before the ALJ," "[the p]laintiff's counsel argued that [the p]laintiff's PRW was a composite job comprised of elements of 'insulator' and 'business manager[,]'" and "[e]vidence in support

---

[9] Rather, the context of that exchange indicates that the VE simply affirmed an understanding of the nature of the ALJ's request.

18

of th[at] contention was presented to the ALJ, including [the p]laintiff's testimony[, ] work history reports[,] and [a] letter [from the plaintiff's employer] . . . indicating that [the p]laintiff's job duties . . . regularly involved exertional tasks that exceeded the [DOT]'s description of the work" (emphasis added)); Rice v. Commissioner of Soc. Sec., No. 1:22CV12, 2023 WL 2396334, at *6 (W.D.N.C. Mar. 7, 2023) (unpublished) (finding reversible error where the "[c]laimant described his [PRW] as dual roles, and the VE categorized [the c]laimant's PRW as a combination of estimator and project manager" with "two different [DOT] titles," but "ALJ did not address the VE's description of the project manager and estimator jobs as combo jobs" (internal quotation marks and citation omitted) (emphasis added)); Lewis v. Saul, No. 1:17CV1115, 2020 WL 33118, at *4 (M.D.N.C. Jan. 2, 2020) (unpublished) (Peake, M.J.) (finding ALJ erred by neglecting to find PRW a composite job, where "evidence show[ed] that [the p]laintiff worked several jobs simultaneously during her time with her former employer . . . and was required to perform the duties of several different jobs on any given workday" and "both [the p]laintiff and the [VE] considered [the p]laintiff's marker/tagger duties to be sub-points of her more general position as a warehouse or distribution worker" (emphasis added)), recommendation adopted, slip op. (M.D.N.C. Feb. 28, 2020) (Tilley, Jr., S.J.); Carothers v. Saul, No. 1:18CV330, 2019 WL 4979978 at *3 (W.D.N.C. Oct. 08, 2019)

19

(unpublished) (remanding where VE classified the claimant's PRW as a "receptionist/general clerk," which reflected <u>two different DOT numbers</u> and exertional levels, but ALJ failed to analyze PRW as composite job); <u>Jacob N. v. Berryhill</u>, No. 5:17CV57, 2018 WL 4688741, at *5–7 (W.D. Va. Sept. 28, 2018) (unpublished) (remanding for ALJ to properly address composite job issue at step four, where the plaintiff "submitted a post-hearing memorandum in which he objected to . . . [the] VE[]'s classification of [the plaintiff's PRW] as a residence supervisor[,]" and attached "written opinion" from vocational specialist, who "concluded that the residence supervisor position as defined in the [<u>DOT</u>] did not accurately reflect the duties of [the plaintiff]'s prior job[,] . . . that she was unable to locate any [<u>DOT</u>] title that matched [the plaintiff]'s job duties[, and] . . . that [the plaintiff]'s [PRW] was a composite job" of <u>multiple DOT titles</u> (internal quotation marks omitted); <u>Jones v. Colvin</u>, No. 3:15CV195, 2016 WL 786626, at *4 (E.D. Va. Feb. 4, 2016) (unpublished) (holding that "ALJ clearly should have considered whether [the p]laintiff's [PRW] constituted a composite job[,]" where the plaintiff testified that his PRW "encompassed several duties" including "whatever [] the company asked of him," and VE "had only one job to [classify as PRW], but she did so using <u>two different [DOT] classifications</u>" (emphasis added)), <u>recommendation adopted</u>, 2016 WL 816792 (E.D. Va. Feb. 26, 2016) (unpublished); <u>Yoakum v. Commissioner of Soc. Sec.</u>, No.

20

1:14CV74, 2015 WL 1585745, at *23 (N.D.W. Va. Apr. 9, 2015) (unpublished) (deeming remand required where ALJ failed to address composite issue and "testimony of both [the p]laintiff and the VE at the administrative hearing demonstrate[d] that [the p]laintiff's [PRW] involved <u>two distinct [DOT] positions</u>" (emphasis added)); <u>Plumb v. Astrue</u>, No. 8:10CV3090, 2012 WL 768058, at *6 (D.S.C. Mar. 7, 2012) (unpublished) (finding remand appropriate for ALJ to determine whether PRW constituted composite job, where ALJ did not discuss VE's classification of the claimant's PRW as <u>two different DOT jobs</u>).

Furthermore, as explained in more detail below, a comparison of Plaintiff's testimony regarding the duties of her three jobs at Path of Hope with the duties in the VE's corresponding <u>DOT</u> titles supports the conclusion 1) that the ALJ erred by not evaluating whether Plaintiff's development director/residential team leader job qualified as a composite job, but 2) that Plaintiff, who carried the burden of proof at step four of the SEP, did not overcome the presumption that the <u>DOT</u> titles cited by the VE and adopted by the ALJ accurately captured her duties as a receptionist and a house manager with Path of Hope.

a. <u>Development Director/Residential Team Leader</u>

Concerning the development director portion of the job, Plaintiff testified that she planned and executed fundraising events such as motorcycle rides, golf tournaments, cook-offs, and

raffles, filled out grant applications, solicited donations, attended board meetings, coordinated with Goodwill and the United Way, and gave speeches on behalf of Path of Hope. (See Tr. 513-14.) With respect to the residential team leader portion, Plaintiff stated that she supervised 20 to 27 staff members who lived on site, including training, hiring, firing, performance appraisals, and scheduling, took residents once per week to recreational activities such as volleyball or softball while the clinical team met, and called 911 when residents had medical emergencies such as substance withdrawals or seizures. (See Tr. 511, 513-14.) Regarding the exertional requirements of the job as a whole, Plaintiff indicated that she spent from 60 to 70 percent of the time standing or walking and that she lifted 50 to 60 pounds. (See Tr. 514.)

The DOT provides the following description of the duties of sedentary job "Director, Community Organization":

> Directs activities of organization to coordinate functions of various community health and welfare programs: Organizes and develops planning program to ascertain community requirements and problems in specific fields of welfare work, and to determine agency responsibility for administering program. Surveys functions of member agencies to avoid duplication of efforts and recommends curtailment, extension, modification, or initiation of services. Advises health and welfare agencies in planning and providing services based on community surveys and analyses. Reviews estimated budgets of member agencies. Prepares and releases reports, studies, and publications to promote public understanding of and support for community programs. May recruit and train volunteer workers. May organize and direct campaign for solicitation of funds.

22

> May visit agency sites to evaluate effectiveness of
> services provided.

DOT, No. 187.167-234 ("Director, Community Organization"), 1991 WL 671420 (emphasis added). Those duties sufficiently capture Plaintiff's administrative, fundraising, coordination, and promotional responsibilities as the development director at Path of Hope, as well as one of the supervisory duties that Plaintiff performed as the residential team leader, e.g., training. Moreover, although the DOT's "Director, Community Organization" job does not list Plaintiff's responsibilities to take the residents to recreational activities once per week during clinical team meetings and to handle emergency calls on their behalf, those relatively small differences constitute normal variations inherent in the specific settings of jobs and would not have compelled the ALJ to find the development director/residential team leader job a composite job. See Lourdes V. v. Berryhill, No. 2:18CV2157, 2019 WL 1639746, at *3 (C.D. Cal. Apr. 15, 2019) (unpublished) ("[W]hile the occupation identified by the VE may not be a precise match with [the p]laintiff's job . . ., it is entirely consistent with [the p]laintiff's own description of her job," and "[the plaintiff] cites no authority for the proposition that the variation in [job] setting necessarily precludes the conclusion reached by the VE."); Dawn H. v. Berryhill, No. 3:17CV1927, 2019 WL 281289, at *6 (D. Or. Jan. 22, 2019) (unpublished) ("Although the [DOT] description does not precisely match [the p]laintiff's description of her

23

work . . ., the [c]ourt concludes that the ALJ did not err . . . [because the plaintiff's] work was analogous . . . .").

Moreover, although the exertional levels of Plaintiff's development director/residential team leader job at Path of Hope (heavy) (see Tr. 514), and the DOT job "Director, Community Organization" (sedentary), see DOT, No. 187.167-234, 1991 WL 672192, differ, SSR 82-61 makes clear that exertional level disparities, in and of themselves, do not render a former job composite, see SSR 82-61, 1982 WL 31387, at *2 (explaining that "former job performed by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy" and, thus, "if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled'" (emphasis added)).

However, the DOT job "Director, Community Organization" fails to capture Plaintiff's full supervisory duties, i.e., hiring, firing, performance appraisals, and scheduling, which appear to constitute the main duties of the residential team leader portion of the job in question. See POMS DI 25005.020B ("The claimant's PRW may be a composite job if it takes multiple [DOT] occupations to locate the main duties of the PRW as described by the claimant."

24

(emphasis added)).  Accordingly, if the Court finds that Plaintiff has not waived her right to raise the composite job argument, the record evidence establishes that the ALJ erred, at a minimum, in not evaluating whether Plaintiff's development director/residential team leader job qualified as a composite job.[10]  However, that error remains harmless because, as discussed below, the ALJ did not err with respect to his findings regarding the receptionist and house manager jobs at step four.  See generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that, "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").

b.  Receptionist

With respect to Plaintiff's receptionist job with Path of Hope, she testified that she held that position for approximately six to nine months (see Tr. 511), and that her duties consisted of handling telephone calls, performing client intake, and conducting tours of the eight-acre campus, as well as that the job entailed standing and walking for greater than 50 percent of the time and

---

[10] If, in fact, the development director/residential team leader job constituted a composite job, then the ALJ erred at step four by finding that Plaintiff remained able to perform that job as generally performed (see Tr. 31).  See POMS 25005.020B (advising that, because "[a] composite job does not have a [DOT] counterpart," the ALJ should not find that a claimant can return to such work "as generally performed in the national economy.").  Moreover, because the ALJ limited Plaintiff to medium exertion work (see Tr. 26), the ALJ could not have found Plaintiff capable of performing the development director/residential team leader job as she actually performed it at the heavy exertional level (see Tr. 514).

25

lifting items weighing 50 or more pounds, such as food supplies, suitcases, and file boxes (see Tr. 512).

In turn, the DOT describes the Receptionist job as sedentary and includes the following duties:

> Receives callers at establishment, determines nature of business, and directs callers to destination: Obtains caller's name and arranges for appointment with person called upon. Directs caller to destination and records name, time of call, nature of business, and person called upon. May operate PBX telephone console to receive incoming messages. May type memos, correspondence, reports, and other documents. . . . May issue visitor's pass when required. May make future appointments and answer inquiries [INFORMATION CLERK (clerical) 237.367-022]. May perform variety of clerical duties [ADMINISTRATIVE CLERK (clerical) 219.362-010] and other duties pertinent to type of establishment. May collect and distribute mail and messages.

DOT, No. 237.367-038 ("Receptionist"), 1991 WL 672192 (emphasis added). Both job descriptions involve the primary duties of handling telephone calls and visitors. Moreover, given the DOT job's allowance of "other duties pertinent to the type of establishment," id., Plaintiff's performance of tours of the facility would not render the "Receptionist" DOT title inappropriate. See Lourdes V., 2019 WL 1639746, at *3 ("[W]hile the occupation identified by the VE may not be a precise match with [the p]laintiff's job . . ., it is entirely consistent with [the p]laintiff's own description of her job," and "[the plaintiff]

26

cites no authority for the proposition that the variation in [job] setting necessarily precludes the conclusion reached by the VE.").[11]

c.  House Manager

Plaintiff testified that she held this role at Path of Hope for less than one year, because she worked from 5 p.m. until the next morning five days per week.  (See Tr. 515.)  In that job, she managed a halfway house for 11 women to live in for up to one year, which involved checking residents in, performing medication checks, administering medications twice per day, taking residents to appointments, cooking meals sometimes, cleaning, ensuring the residents did their chores and remained safe, and training new staff.  (See Tr. 511, 515-16.)  Exertionally, Plaintiff stated that she stood or walked greater than 75 percent of the time, and lifted from 50 to 75 pounds.  (See Tr. 515.)

The DOT job title "Residence Supervisor," rated as sedentary, entails the following responsibilities:

> Coordinates variety of activities for residents of boarding school, college fraternity or sorority house, care and treatment institution, children's home, or similar establishment: Orders supplies and determines need for maintenance, repairs, and furnishings.  Assigns rooms, assists in planning recreational activities, and supervises work and study programs.  Counsels residents in identifying and resolving social or other problems. Compiles records of daily activities of residents. Chaperones group-sponsored trips and social functions. Ascertains need for and secures services of physician. Answers telephone and sorts and distributes mail.  May

---

[11] Again, the exertional differences between Plaintiff's Path of Hope job (heavy) and the DOT title in question (sedentary) do not compel the conclusion the position constitutes a composite job.  See SSR 82-61, 1982 WL 31387, at *2.

> escort individuals on trips outside establishment for shopping or to obtain medical or dental services. May hire and supervise activities of housekeeping personnel. May plan menus.

DOT, No. 187.167-186 ("Residence Supervisor"), 1991 WL 671408 (emphasis added). Those duties fairly approximate the responsibilities Plaintiff described in her job as a house manager, except that the DOT job envisions the possibility of planning menus and supervising housekeepers, see id., whereas Plaintiff testified that she cooked sometimes, and that she and the residents performed the housekeeping chores themselves (see Tr. 515). Such relatively minor differences, however, do not establish that Plaintiff's house manager job qualified as composite. See Joe N. v. Commissioner of Soc. Sec., No. 19CV1384S, 2021 WL 4316556, at *6 (W.D.N.Y. Sept. 23, 2021) (unpublished) (rejecting "[the p]laintiff's argument that his job involved restraining youth, and therefore d[id] not exactly match the [Residence Supervisor] job[] the VE discussed," because "[d]escriptions of [a] claimant's jobs often differ from the [DOT] without there being reversible error" (citing Jasinski v. Barnhart, 341 F.3d 182, 185 (2d Cir. 2003) (noting that "[m]any specific jobs differ from those jobs as they are generally performed, and the [VE] may identify those unique aspects without contradicting the [DOT]."))).[12]

_____

[12] Once again, the purely exertional differences between Plaintiff's house manager job at Path of Hope (heavy) and the DOT title "Residence Supervisor" (sedentary) do not mandate a finding that the house manager job constitutes a composite job. See SSR 82-61, 1982 WL 31387, at *2.

In sum, Plaintiff's first assignment of error does not establish a basis for remand.[13] Furthermore, even if the ALJ had erred in failing to find Plaintiff's PRW qualified as composite jobs, that error would still remain harmless. See generally Fisher, 869 F.2d at 1057. As discussed in more detail below, the ALJ did not err in making his alternate, step-five finding that other jobs existed in significant numbers in the national economy that Plaintiff could perform.

_____

[13] Plaintiff additionally contends that the ALJ erred because he "failed to include the appropriate findings of fact regarding the physical and mental demands of [Plaintiff's PRW] in the decision as required by SSR 82-62." (Docket Entry 10 at 9.) The ALJ described Plaintiff's PRW by DOT title, exertional level, and Specific Vocational Preparation ("SVP") level (see Tr. 31), and found that Plaintiff remained able to perform all three of her prior jobs as generally performed, i.e., "as defined in the [DOT]" (id.). Thus, the DOT's descriptions of the physical and mental demands of the jobs in question suffice under SSR 82-62. See Cyr v. Berryhill, No. 1:17CV798, 2017 WL 6459565, at *11 (D.S.C. Dec. 12, 2017) (unpublished) ("[The ALJ] made a finding of fact as to the physical and mental demands of [the p]laintiff's PRW to the extent that [the ALJ] cited the [DOT] numbers and exertional and skill levels the VE indicated in his testimony for [the p]laintiff's PRW . . . ."), recommendation adopted, 2017 WL 6442195 (D.S.C. Dec. 18, 2017) (unpublished); Thomas v. Astrue, No. 0:08CV2847, 2010 WL 844756, at *7 (D.S.C. Mar. 3, 2010) (unpublished) ("[T]he court finds that the ALJ provided specific findings of fact as to the physical and mental demands of [the plaintiff]'s [PRW] by providing the exact [DOT] number and name of his [PRW]."); Benson-White v. Astrue, No. 0:08CV2366, 2009 WL 2988694, at *5 (D.S.C. Sept. 17, 2009) (unpublished) ("To the extent that the ALJ's failure to specifically enumerate the job duties is error, it is harmless, as he found that [the plaintiff] could perform [his PRW] as it is generally performed, and the job duties are specifically enumerated in the [DOT]." (internal quotation marks omitted)). Additionally, to the extent the ALJ erred by not further identifying the physical and mental demands of Plaintiff's PRW, that error remains harmless. See generally Fisher, 869 F.2d at 1057. Plaintiff made no attempt to show how the ALJ's failure to makes those findings under SSR 82-62 prejudiced her claims (see Docket Entry 10 at 11-16), further precluding relief on that front, see Lattimore v. Saul, No. 2:18CV2976, 2020 WL 2499660, at *5 (D.S.C. Jan. 31, 2020) (unpublished) (rejecting the plaintiff's argument that the ALJ failed to make findings regarding physical and mental demands of PRW, "[b]ecause [the plaintiff d[id] not allege any specific inconsistencies between her RFC and the [DOT]'s description of her [PRW] as generally performed"), recommendation adopted, 2020 WL 1316531 (D.S.C. Mar. 20, 2020) (unpublished).

## 2. Conflicts Between VE's Testimony and <u>DOT</u>

In Plaintiff's second and final assignment of error, she contends that "[t]he ALJ's reliance on the VE's testimony to support an alternate [s]tep 5 denial of benefits in [Plaintiff]'s claim[s] is not supported by substantial evidence where the ALJ failed to identify and resolve the apparent conflict between the VE's testimony and the [<u>DOT</u>]." (Docket Entry 10 at 11 (bold font and block formatting omitted).) In particular, Plaintiff maintains that apparent, unresolved conflicts existed between 1) the <u>DOT</u>'s description of the Stores Laborer job as requiring "occasional climbing," and "the ALJ's restriction to avoid all exposure to unprotected heights" (<u>id.</u> at 13 (citing Tr. 26)), 2) the <u>DOT</u>'s rating of the Textile Laborer job as "requir[ing] exposure [to] loud noise levels," and "the ALJ's restriction to 'avoid concentrated exposure to loud noise levels'" (<u>id.</u> (quoting Tr. 26)), and 3) the <u>DOT</u>'s characterization of the Bagger job as involving occasional exposure "to weather conditions and direct sunlight" and the "ALJ's RFC" (<u>id.</u>), which precludes "work in sustained direct sunlight" (Tr. 26). Plaintiff asserts that the ALJ's "fail[ure] to identify th[os]e apparent conflict[s] between the VE's testimony and the [<u>DOT</u>] or [to] elicit an explanation from the VE that would resolve th[ose] conflict[s]" (<u>id.</u> at 13-14) violates Social Security Ruling 00-4p, <u>Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other</u>

30

_Reliable Occupational Information in Disability Decisions_, 2000 WL 1898708 (Dec. 4, 2000) ("SSR 00-4p"), and _Pearson v. Colvin_, 810 F.3d 204, 209-11 (4th Cir. 2015) (_id._ at 11-16). Those arguments fall short.

SSR 00-4p places an affirmative duty on an ALJ to elicit an explanation from the VE as to any "apparent unresolved conflict" between the VE's testimony and the DOT:

> Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the [DOT]. When there is an apparent unresolved conflict between VE . . . evidence and the [DOT], the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled. . . . [A]s part of the [ALJ's] duty to fully develop the record, the [ALJ] will inquire, on the record, as to whether or not there is such consistency.

SSR 00-4p, 2000 WL 1898704, at *2 (emphasis added). "[A]n ALJ has not fulfilled his affirmative duty merely because the [VE] responds 'yes' when asked if her testimony is consistent with the [DOT]," _Pearson_, 810 F.3d at 208 (internal quotation marks omitted); thus, "[t]he ALJ independently must identify . . . where the [VE's] testimony seems to, but does not necessarily, conflict with the [DOT]," _id._ at 209 (emphasis added); _see also_ _id._ (rejecting the Commissioner's argument that "apparent" conflict meant "obvious" one).

In this case, the ALJ first queried the VE whether an individual with Plaintiff's age, education, and work history, who

could perform medium work, but, as relevant here, should "avoid[] concentrated exposure to loud noise levels," as well as "all exposure to . . . unprotected heights," and should "not work in sustained direct sunlight" (Tr. 536), could perform any unskilled, medium-exertion jobs (see Tr. 537-38). In response, the VE opined that such an individual could perform the DOT jobs of Stores Laborer, Bagger, and Textile Laborer, and provided the corresponding DOT codes for the three jobs, as well as their incidence in the national economy. (See Tr. 538.) Following that exchange, the ALJ asked the VE whether her testimony "[wa]s . . . consistent with the [DOT]," and the VE responded affirmatively "with the exception that [the DOT] d[id] not address levels of lighting such as office setting lighting or direct sunlight or no acute hearing required" and that, as to those subjects, she testified based on her "education and experience." (Id.) On cross-examination, Plaintiff's counsel pointed out to the VE that the DOT rates the Textile Laborer job as involving exposure to loud noise (see Tr. 540), and the VE replaced the Textile Laborer job with the DOT job Childcare Attendant and provided that job's incidence in the national economy (see Tr. 542).

The ALJ subsequently adopted the VE's testimony to find, at step five of the SEP, that "[Plaintiff wa]s capable of making a successful adjustment to other work that exists in significant numbers in the national economy" (Tr. 32). More specifically:

32

> To determine the extent to which [the RFC's non-exertional limitations] erode the unskilled medium occupational base, the [ALJ] asked the [VE] whether jobs exist in the national economy for an individual with [Plaintiff's] age, education, work experience, and [RFC]. The [VE] testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as store laborer ([DOT] 922.687-0584; 365,000 jobs nationally); grocery bagger ([DOT] 920.687-014; 955,000 jobs nationally); textile laborer ([DOT] 589.687-026; 265,000 jobs nationally). All of these jobs have an SVP of 2.
>
> Pursuant to SSR 00-4p, I have determined that the [VE]'s testimony is consistent with the information contained in the [DOT]. The [VE] testified that although the [DOT] does not address levels of lighting and acute hearing requirements, that portion of [her] testimony was based on [her] education, training and experience in the field.

(Id. (emphasis added).)

As an initial matter, the ALJ neglected to acknowledge in his decision the VE's change from the Textile Laborer job to the Childcare Attendant job. (See id.) As the VE removed the Textile Laborer job from consideration due to the DOT's rating of that job as involving exposure to loud noise (see Tr. 542), the ALJ erred at step five by finding that Plaintiff remained able to perform that job (see Tr. 32). That error, however, remains harmless under the circumstances here, as Plaintiff has not shown that apparent, unresolved conflicts existed with respect to the remaining jobs of Stores Laborer and Bagger. See generally Fisher, 869 F.2d at 1057.

a. Stores Laborer

Plaintiff argues that the DOT's listing for Stores Laborer reflects that the job requires "occasional climbing" (Docket Entry

33

10 at 13 (referencing DOT, No. 922.687-058 ("Laborer, Stores"), 1991 WL 688132)), as well as that the DOT's companion volume, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO"), elaborates that climbing "includes 'ascending or descending ladders, stairs, scaffolding, ramps, poles and the like'" and that "'body agility is emphasized'" (id. (quoting SCO, App'x C ("Physical Demands"))). In Plaintiff's view, the climbing requirement of the Stores Laborer job conflicts with the RFC's "restriction to avoid all exposure to unprotected heights." (Id. (citing Tr. 26).)

Plaintiff's argument attempts to conflate the postural limitation of climbing with the environmental limitation of exposure to unprotected heights. Significantly, the ALJ did not limit Plaintiff's ability to climb ramps, stairs, ladders, ropes, and scaffolds at all in the RFC (see Tr. 26) or dispositive hypothetical question (see Tr. 536). Moreover, the DOT indicates that Stores Laborer job does not involve "[h]igh [e]xposed [p]laces," DOT, No. 922.687-058 ("Laborer, Stores"), 1991 WL 688132), and Plaintiff did not cite (and the undersigned's research did not reveal) any authority that a preclusion of exposure to unprotected heights apparently (let alone actually) conflicts with a job requiring occasional climbing. Indeed, the United States Court of Appeals for the Ninth Circuit has held that even an RFC restriction to no climbing of ladders, ropes, and scaffolds does

34

not conflict with the Stores Laborer's requirement of occasional climbing:

> . . . [C]limbing ladders, ropes, or scaffolds is not a requirement for every job as a[ Stores Laborer]. Although the [DOT] does list "[c]limbing . . . [o]ccasionally" in the "task element" statement for the [Stores Laborer] occupation, that statement explains that a[ Stores Laborer] performs "any combination of [the] following tasks" — not that every [Stores Laborer] must perform every task listed. DOT, 922.687-058 (Laborer, Stores), 1991 WL 688132. Furthermore, among those [Stores Laborers] whose work does involve occasional climbing, the [DOT] does not state that the [wor]kers must climb ladders, ropes, or scaffolds; they may also be climbing stairs or ramps, for instance, which is not prohibited by [the plaintiff]'s RFC. Therefore, there was no conflict between the [DOT] and the VE's testimony that [the plaintiff] could work as a[ Stores Laborer], even though the [DOT] includes "[c]limbing . . . occasionally" as a possible task.

Maxwell v. Saul, 840 F. App'x 896, 898–99 (9th Cir. 2020) (internal citations omitted). Accordingly, Plaintiff has not shown that the ALJ failed to identify and resolve any apparent conflicts with respect to the Stores Laborer job.

b.    Bagger

With regard to the Bagger job, Plaintiff asserts that "the express language for th[at] job . . . reveals that [it] requires that the worker go outside which would expose them to weather conditions and direct sunlight." (Docket Entry 10 at 13.) In particular, Plaintiff notes that the DOT's "job description indicated that a bagger will 'push car[t] to customer's vehicle . . . [and] place groceries into customer's vehicle[, c]ollect shopping carts from parking lots and surrounding

35

areas[,] . . . [and m]ay assist in unloading delivery trucks.'"
(Id. (quoting DOT, No. 920.687-014 ("Bagger"), 1991 WL 687964).)
In Plaintiff's view, the Bagger job's "occasional exposure to
weather, which necessitates going outside, would also expose the
worker to direct sunlight." (Id.)

Notably, Plaintiff's contentions gloss over the ALJ's
qualifier "sustained" in the RFC's preclusion of work involving
"sustained direct sunlight" (Tr. 26 (emphasis added)). (See Docket
Entry 10 at 13.) Thus, although the DOT's description of the
Bagger's duties include "push[ing] cart[s] to [a] customer's
vehicle, upon request" and "[c]ollecting shopping carts from [the]
parking lot," and "[m]ay" include "assist[ing] in unloading
delivery trucks," DOT, No. 920.687-014 ("Bagger"), 1991 WL 687964
(emphasis added), those activities entail only brief, episodic
exposure to direct sunlight rather than "sustained" exposure, as
precluded by the ALJ's RFC (Tr. 26).

Moreover, although the DOT indicates that the Bagger job
involves "[e]xposure to [w]eather[ o]ccasionally," or "up to 1/3 of
the time," DOT, No. 920.687-014 ("Bagger"), 1991 WL 687964,
Plaintiff did not cite (and the undersigned's research did not
locate) any authority for the proposition that an RFC's preclusion
of work involving exposure to "sustained direct sunlight" (Tr. 26
(emphasis added)) conflicts with a job requiring occasional
exposure to weather (see Docket Entry 10 at 11-16). The word

36

"sustained" denotes a length of time continuing for an extended period without interruption, <u>see</u> https://merriam-webster.com/dictionary/sustained (last visited Nov. 29, 2023), whereas the <u>DOT</u> defines "[o]ccasionally" to mean "up to 1/3 of the time," <u>DOT</u>, No. 920.687-014 ("Bagger"), 1991 WL 687964, which caps the <u>total</u> amount of time a worker could face exposure in a workday but does not address the <u>length of time each exposure would take</u>. Notably, as the <u>DOT</u>'s duties for Bagger make clear, a worker's exposures to the weather or direct sunlight would consist of brief, episodic stints outside rather than long, sustained exposures, <u>DOT</u>, No. 920.687-014 ("Bagger"), 1991 WL 687964. As such, Plaintiff has not shown that the ALJ failed to identify and resolve any apparent conflicts regarding the Bagger job.

Put simply, Plaintiff's second issue on review fails to demonstrate a basis for remand.

### III.  CONCLUSION

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, and that this action be dismissed with prejudice.


                          /s/ L. Patrick Auld
                     **L. Patrick Auld**
               **United States Magistrate Judge**

December 18, 2023